UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

Davon Tisdale,
Plaintiff,

v.

Pepsi Cola of Florence, LLC,
Defendant.

**COMPLAINT**
**(Jury Trial Requested)**

## JURISDICTION AND PARTIES

1. This suit is brought and jurisdiction lies pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* (hereinafter "Title VII"), and §107(a) of the Americans with Disabilities Act, 42 U.S.C. §12117 (hereinafter "ADA").

2. All conditions precedent to jurisdiction under §706 of Title VII, 42 U.S.C. §2000e-5 have occurred or been complied with.

   a. A Charge of Discrimination on basis of race discrimination, disability discrimination and retaliation was filed by the Plaintiff with the U.S. Equal Employment Opportunity Commission ("EEOC").

   b. Notification of the Right to Sue was received from the EEOC on or about January 26, 2023.

   c. This Complaint has been filed within the 90 days of receipt of the EEOC's Notice of Right to Sue.

3. The Plaintiff, Davon Tisdale, is a citizen and resident of the State of South Carolina and resides in the County of Florence, State of South Carolina.

4. The Defendant, Pepsi Cola of Florence, LLC, upon information and belief, is a domestic corporation, organized and operating under the laws of the State of South Carolina and conducting business in the County of Florence, State of South Carolina.

5. All unlawful and improper employment practices alleged herein were committed within the State of South Carolina.

6. The Defendant is a "person" within the meaning of §701 of Title VII and §107(a) of the ADA.

7. The Defendant is an industry that affects commerce within the meaning of Title VII and §107(a) of the ADA.

8. The Defendant employs fifteen (15) or more employees and is an "employer" within the meaning of Title VII and §101(5)(a) of the ADA.

9. Therefore, the parties, matters and all things hereinafter alleged are within the jurisdiction of the Court.

## STATEMENT OF FACTS

10. The Plaintiff began working for the Defendant on or about April 20, 2021 as a warehouse worker. At all times, he was efficient and effective in his employment.

11. Beginning on or about October 1, 2021, the Plaintiff was subjected to racial discrimination by a co-worker, Mutaz Hassan. Mr. Hassan would call the Plaintiff names like "picker," "cotton picker," and "nigger" on a frequent basis. The Plaintiff asked him to stop, but he continued.

12. The Plaintiff reported the discrimination to two different supervisors, Tim and Brandon, but nothing was done to stop the harassment.

13. On or about February 14, 2022, the Plaintiff was stacking and wrapping pallets of two-liter sodas when he felt a "pop" in his left shoulder, injuring his shoulder and arm.

14. Immediately following the incident, the Plaintiff reported his injuries to his Defendant's Safety Manager, Trison Paradis.

15. Mr. Paradis did not take Plaintiff's injuries seriously. The Plaintiff continued to tell Mr. Paradis that his shoulder was bothering him between February 14 and February 18, but he refused to provide the Plaintiff with medical treatment.

16. The Plaintiff then left for vacation on February 18, 2022 and returned on February 24, 2022. When the Plaintiff was still complaining of his shoulder pain upon his return, Trison finally agreed to send the Plaintiff to the doctor.

17. On February 25, 2022, the Plaintiff's physician placed him on temporary lifting Restrictions as a result of his work-related injury. The Plaintiff presented his doctor's note to Tim and to Mr. Paradis, which constituted his request for reasonable accommodations.

18. Despite being placed on restricted duty and requesting reasonable accommodations, the Defendant required the Plaintiff to perform duties too strenuous for his restrictions, thus failing to accommodate him.

19. For example, on or about March 1, 2022, the Plaintiff was ordered to paint and pull carpet, which were activities prohibited by his treating physician and non-essential functions of his position. When the Plaintiff was unable to perform those duties, he was threatened with termination for "insubordination."

20. Around the same time Mr. Paradis declined to provide Plaintiff with reasonable accommodations as requested, he allowed Kyle Turpin, a Caucasian counterpart, to only perform light-duty work after getting injured at work.

21. Kyle Turpin was also a warehouse worker who performed the same day-to-day tasks as the Plaintiff, reported to the same supervisor and had comparable restrictions issued by his physician.

22. On or about March 7, 2022, the Plaintiff was ordered to come in to work that morning even though the Defendant knew he had a morning appointment scheduled with the on-site doctor.

23. Because the Plaintiff attended his doctor's appointment instead of going to work, he was terminated for "stealing company time."

24. This reason stated by the Defendant for Plaintiff's termination was not the true reason for his termination and was merely pretextual in nature.

25. In actuality, the Plaintiff was terminated in an act of discrimination on the basis of his race and disability and in retaliation for making a complaints of race discrimination, for requesting reasonable accommodations, and for instituting a workers' compensation claim.

26. It was the duty of Defendant, by and through its agents and servants, to prevent such acts of racial discrimination, disparate treatment and inappropriate behavior from occurring and to stop it once the behavior had been reported by the Plaintiff.

27. The Defendant retaliated against Plaintiff for reporting the discriminatory acts and failed to stop the discrimination, disparate treatment, and inappropriate behavior, thereby creating a hostile work environment.

## FOR A FIRST CAUSE OF ACTION
### Violation of Title VII – Disparate Treatment

28. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

29. The Plaintiff is a member of a protected group on the basis of his race. He was discriminated against based on his race in violation of Title VII and the Equal Employment Opportunity Act.

30. The Defendant was wanton, reckless, willful and intentional in the discrimination of the Plaintiff in the following particulars, to wit:

    a.    In showing preferential treatment to Caucasian employees and detrimental treatment to Plaintiff;

b.   In demonstrating a pattern of discriminatory treatment towards African American employees by making disparaging remarks; and

c.   In other particulars which discovery may show.

31. The Plaintiff's race was a determining factor in the disparate treatment of the Plaintiff.

32. The Defendant violated Title VII and the Equal Employment Opportunity Act by allowing the racial discrimination and preferential treatment to exist in the workplace.

33. In failing to protect the Plaintiff from racial discrimination and preferential treatment, the Defendant acted with malice or reckless indifference to the federally protected rights set out under Title VII and the Equal Employment Opportunity Act.

34. As a direct and proximate result of the Defendant's discrimination against the Plaintiff, the Plaintiff has suffered and will continue to suffer substantial damages for pecuniary losses, including a loss of wages, benefits, and employment opportunities and nonpecuniary losses including embarrassment, humiliation, mental anguish and loss of enjoyment of life.

35. Due to the acts of the Defendant, the Plaintiff is entitled to injunctive relief or civil damages including back wages plus interest, payment for lost benefits, reinstatement of benefits and front pay.

**FOR A SECOND CAUSE OF ACTION**
**Violation of Title VII - Hostile Work Environment**

36. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

37. Once the Plaintiff asserted his rights under Title VII, he was subjected to adverse terms and conditions by the Defendant, thereby causing a hostile work environment.

38. The Defendant's wrongful actions arising from Plaintiff's protected activity, as set forth aforesaid, constituted a hostile work environment for the Plaintiff. The Defendant therefore violated Title VII by allowing a hostile work environment to exist in the workplace.

39. The Defendant was wanton, reckless and intentional in the discrimination of the Plaintiff by creating a hostile work environment.

**FOR A THIRD CAUSE OF ACTION**
**Violation of Title VII – Retaliation**

40. The Plaintiff repeats and reiterates each and every allegation as if fully set forth herein.

41. As alleged above, the Plaintiff complained to the Defendant on several occasions about racial discrimination.

42. The Plaintiff's complaints were made in good faith and constituted protected activity under Title VII.

43. Shortly after making said complaints, the Defendant fired the Plaintiff, which is in violation of 42 U.S.C. §2000e-3.

44. The Defendant's stated reasons for retaliation and termination were mere pretext for the retaliation against the Plaintiff based on his engaging in protected activity.

45. The Plaintiff's reports of racial discrimination were a determining factor in the retaliation and termination of the Plaintiff. But for Plaintiff's reports of racial discrimination, he would not have been terminated.

46. The Defendant violated Title VII and the Equal Employment Opportunity Act by allowing retaliation to exist in the workplace.

47. In failing to protect the Plaintiff from retaliation, the Defendant acted with malice or reckless indifference to the federally protected rights set out under Title VII.

48. The Defendant was wanton, reckless and intentional in the retaliation against the Plaintiff for engaging in protected activity.

49. That the aforesaid conduct of Defendant, its agents and servants, violates United States laws against retaliatory dismissal; was, in fact, retaliatory in nature; and was in violation of Title VII.

50. As a result of the above, the Plaintiff has suffered damages in the form of lost back and future wages, lost benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, depression, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation and loss to professional standing, character and reputation.

51. That the Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff; therefore, the Plaintiff is entitled to recover punitive damages from the Defendant.

### FOR A FOURTH CAUSE OF ACTION
### Violation of the ADA – Failure to Accommodate

52. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

53. The Plaintiff is an individual with a "disability" within the meaning of §3(2) of the ADA, 42 U.S.C. §12102(2).  More particularly, the Plaintiff has a physical impairment that substantially limits one or more of his major life activities and has a record of such impairment.

54. The Plaintiff is a "qualified individual with a disability" as that term is defined in §101(8) of the ADA, 42 U.S.C. §12111(8). More specifically, Plaintiff is an individual with a disability who can perform the essential functions of his job and other jobs in Defendant's employ.

55. As a result of his disability, the Plaintiff requested the reasonable accommodations of: refraining from raising his left arm overhead, refraining from lifting more than ten (10) pounds, and attending periodic doctor's appointments.

56. The Defendant declined, without just cause, to provide those accommodations to the Plaintiff.

57. The Defendant has also failed to undertake any good faith efforts, in consultation with Plaintiff, to identify and make other reasonable accommodations.

### FOR A FIFTH CAUSE OF ACTION
### Violation of the ADA – Retaliation

58. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

59. As alleged above, the Plaintiff is a handicapped person as defined by S.C. Code §2-7-35, as amended, and the ADA, in that he has a disability which substantially limits one or more major life activities and meets other definitions prescribed by federal law.

60. Plaintiff's requested accommodations were made in good faith and constituted protected activity under the ADA.

61. Shortly after requesting said accommodations, the Defendant fired the Plaintiff, which is in violation of the ADA and 42 U.S.C. §2000e-3.

62. The Defendant was wanton, reckless and intentional in the retaliation against the Plaintiff for engaging in protected activity.

63. The aforesaid conduct of Defendant, its agents and servants, violates United States laws against retaliatory dismissal; was, in fact, retaliatory in nature; and was in violation of the ADA and Title VII of Civil Rights Act of 1964, as amended (42 U.S.C. §2000e *et seq.*).

64. As a result of the above, the Plaintiff has suffered damages in the form of lost back and future wages, benefits and expenses associated with finding other work; and has further suffered severe psychological harm, emotional distress, anxiety, depression, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, loss to character and reputation and physical and personal injuries.

## FOR A SIXTH CAUSE OF ACTION
### Violation of S.C. Code §41-1-80

65. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

66. The Plaintiff's termination arose directly from Plaintiff's assertion of work-related claims.

67. The Plaintiff's institution of a workers' compensation claim was a substantial factor in bringing about his discharge.

68. The Plaintiff's termination, in fact, was retaliatory in nature for the Plaintiff's workers' compensation claim and the arbitrary and irrational reason given was mere pretext, all in violation of the S.C. Code of Laws, §41-1-80, as amended.

69. The acts and conduct of the Defendant set forth above constitute a clear violation of public policy and were conducted in bad faith.

70. Due to the acts of the Defendant, its agents and employees, the Plaintiff is entitled to back wages including overtime wages, bonuses and interest thereon, from the date of his termination to the present date, and front pay for wages he will lose in the future.

71. By reason of such wrongful and retaliatory discharge by the Defendant, its agents and employees, the Plaintiff has been damaged in such an amount to be determined by the trier of fact.

## REQUEST FOR RELIEF

72. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

73. Due to the acts of the Defendant, the Plaintiff suffered fright, revulsion, disgust, humiliation, embarrassment, shock and indignities, lost wages (both back and front pay) and other work benefits.

74. That by reason of such wrongful acts of the Defendant, the Plaintiff has been damaged in such an amount to be determined by the trier of fact.

WHEREFORE, Plaintiff prays for the following relief:

1. Judgment in favor of the Plaintiff and against Defendant for all causes of actions in an amount which is fair, just and reasonable,

2. Judgment in favor of the Plaintiff and against Defendant for back pay and all lost or diminished benefits he would have earned, such to be determined by the trier of fact;

3.      Judgment in favor of the Plaintiff and against Defendant for front pay and any other work benefits he lost in an amount to be determined by the trier of fact;

4.      Judgment in favor of the Plaintiff and against Defendant for compensatory damages;

5.      Judgment in favor of the Plaintiff and against Defendant for embarrassment, humiliation and emotional distress in an amount to be determined by the trier of fact; and

6.      Judgment in favor of the Plaintiff and against Defendant, in such an amount of actual damages, punitive damages, attorney's fees, costs of this action and for any other relief this Honorable Court deems just, proper and allowable under the law.

**WIGGER LAW FIRM, INC.**

s/ *Emily Hanewicz Tong*
Emily Hanewicz Tong (Fed. I.D. #12177)
Attorney for the Plaintiff
8086 Rivers Avenue, Suite A
North Charleston, SC  29406
t: (843) 553-9800
f: (843) 203-1496
e: ehtong@wiggerlawfirm.com

North Charleston, South Carolina
April 24, 2023